Good morning, Angela Couch on behalf of the City of Roswell. May it please the Court. On behalf of the City, we do appreciate the Court's attention to this case and the opportunity to explore the issue in the Court's recent order. In reviewing the Telecommunications Act and these specific sections specifically, a fair reading approach is the best way to get us to where we're trying to go. What would a reasonable person who understands the English language understand these words in 1996? Yeah. That's where we're going. I like that. That's a start. That's a good beginning. To answer this, the objective focus on the words, the context of the words, the use of the words throughout the statute, and the purpose of the statute are key. Purpose as derived from the text. I'm sorry? The purpose as derived from the text itself. Yes, sir. And in this case, that's easy enough to do because we have both a prologue and an actual statement of the purpose in the statute itself. Yeah. So, you know, you look at Section 332 of Title 47, and you've got all these provisions about mobile services, and you get to subsection 7, and there's a general rule as I read it. And the general rule is, except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a state or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wire service facilities. That's with a title of preservation of local zoning authority. I read that, and it looks like a general rule that zoning authority is fine. And then you get to B, except as provided in this paragraph, the B, the limitations. Yes, sir. And the limitations say the regulation of the placement, construction, and modification of the facilities shall not unreasonably discriminate among providers, right? Yes. Shall not prohibit or have the effect of prohibiting the provision of personal wireless services. That looks to me like a rule about the regulation, like the zoning ordinance, for example. Yes, sir. I think B addresses the two ways that the state is able to act in zoning, regulation and decisions. And they're treated separately. And when you get to 2, little 2, then you're talking about individual decisions. Agreed. Yes, sir. And then number 3, you're talking about an individual decision. And then you get down to little 4, and you're back to regulation, right? Yes. And the problem, it seems to me, with this case is that Judge Totenberg has been assuming, has been operating under the assumption, and maybe because nobody pointed out to Judge Totenberg that this isn't a right way to read it, but she's been operating under the assumption that number 1 can refer to the individual decision, the individual request, as opposed to 2 and 3. Yes, sir. So we've been arguing all along that we haven't prohibited services with this decision. But the distinction between a regulation and a decision, you are correct, it has not been raised. Did Judge Totenberg, or maybe I didn't understand the analysis, I think it's the 2016 decision that I'm looking at, where it says the city's argument that the anti-prohibition clause applies only to blanket regulatory provisions and not to a denial of a single permit application is without merit. How is that different from the question the Chief has posed? So the question that the Chief has posed is specifically tied to the language of the statute. Our argument has been that this decision doesn't prohibit services because there are 31 cell towers in the city of Roswell, 43 small cells. All of the providers are on all of the facilities. You made kind of a general argument in this direction in the district court, but you didn't really focus on the textual. I did not. You are correct. And I'll take the opportunity to do that now. The three substantive standards of B use the term regulation, while the three procedural sections use the term decision. I think this is purposeful. The Telecommunications Act has been called an exercise in cooperative federalism. Here Congress has given state and local governments the authority to maintain their traditional areas, zoning, land use. Section A says that that's preserved, that the decisions are preserved. Congress isn't telling states what to do specifically with decisions, individual singular decisions. What they are telling you, what they are telling the states though, is when you have a regulation, something that could potentially have a nationwide effect, now we're going to start telling you the meat. We're going to address the merits. And this is consistent throughout the Telecommunications Act itself. The TCA uses the word decision only 13 times. And every time it uses the word decision, it's a procedural context. It uses the word regulation 186 times. Now I did a word search. I'm not going to say I count every word. I did that with a word search. But every time it talks about a regulation, it's substantive. And the concept of the difference between decision and regulation makes sense when you talk about the purpose of the Telecommunications Act overall. We're going to let the states make their individualized, particularized decisions. And when they do it, they've got to make sure that it's, that it's, the request is handled within a reasonable time. They've got to make sure that it's in writing, that there's evidence contained in a record to support it. Correct. Those are the provisions that pertain to the individual, which you're calling procedural decisions. Yes, sir. But that's different from attacking the substantive regulation itself.  Correct. Yes, sir. In this case, T-Mobile has not, in fact, addressed the regulation. It's only talking about the decision itself. Well, if the district court has been operating under an erroneous reading of the Act, and to some degree, because no one's really, you know, made this point to the district court. I mean, this is, seems to be a pervasive problem with this litigation nationally. I don't know. Yes, sir. It doesn't seem to me that any court really has focused on the language of the text. It has not. There has been just sort of, you go forward with this concept of anti-discrimination or prohibition, as opposed to the specific decision itself. If what we're saying is right, and this was an erroneous understanding of how the Act works, it seems to me we have to send it back to Judge Totenberg for her to reconsider everything under a proper understanding and to give T-Mobile an opportunity to make its case where they can either attack the ordinance or they have to make some kind of attack that comports with the Act that goes to the individual decision. Yes, sir. I think that's ultimately where we would land. I do want to say— It would be a vacate and remand. Yes, sir. It wouldn't be a reverse and render. It would have to go back. I think so. I think it's the district court's power to take the facts as she finds them and applies it to the law. If there was an erroneous interpretation of the law, then I think she gets the opportunity to take those facts and apply it to the correct version of the law, if you will. I think when you look at the— There's really nothing else, if this is the correct way to handle the case, there's really nothing else to be done here, is there? You mean in this court or by the district court? This court. This court, correct. Yes, sir. I think what we're looking to do here is to determine the state of the law. What are we supposed to be looking—what are we supposed to be taking these facts and applying it to? How does the Act work? How do we understand the Act? That's what we've got to figure out. Yes, sir. And I think the decision for the reasonable time goes to the goal of rapid deployment. I think the decision regarding a denial and substantial evidence comports with Section 5 regarding review. I think the fact that Section 5 doesn't use the word regulation or decision is important. What it means is any action, and the way the state acts is through regulation and decisions. That's why it doesn't use either one. Congress knows the difference between a regulation and a decision, and if they meant for B.1 to include decisions, they certainly could have used that word. They could have said decision, or they could have said an action. Well, I'm just thinking, I think of something Justice Scalia has said, and don't misquote me, but, you know, sometimes we assume that drafters are without error, which would be foolish. Or he said something like that to recognize.  Of course. So I don't know. Yeah. I mean, I guess I have some questions about the issue of why wouldn't it be common sense to understand that in this context, regulation should be broadly interpreted to include the denial, the single denial. I think because that's contrary to the use of the word throughout. I mean, this is a deregulatory act. The whole point is we're looking at the regulations. We're not looking at the specific decisions. There was an opportunity for Congress to preempt the entire situation and say, no, all of the decisions have to come through the feds. That's not what they said. We're going to cooperate with the states. You get to do the individualized decision. We have to tell you how to do it. But when it comes to the regulations on the nationwide stage for a national wireless network, we're going to tell you how these regulations, what you can and cannot do in that respect. And I think here the regulation is, it could be a singular decision if it is tantamount to a regulation. I think if you had a decision that basically reflects policy, but that's not what this says. That's not what this says. And that's certainly not the evidence in our case. There certainly isn't anything to support that. The actual text of the statute is clear. The difference between regulation and decision is purposeful. It's a reason. It's a reason why it's there. And I think... Okay. I think we understand your case, Ms. Couch. Okay. Thank you. You've gone over. You were answering a question. Mr. Thompson. Thank you, and good morning, Your Honors, and may it please the Court, Scott Thompson on behalf of T-Mobile. Let me jump right into it. I think that the text in context in Section 332 makes clear that, in fact, Congress did intend for courts to act on individual decisions made by cities and apply that to all four of the limits. And let me point out why. So, as the Court has already recognized, Subsection A says that it's going to be... We're talking about A of 7. Yes. I'm going to use A for the Roman, and I'm going to talk about Romanet when we get down into the little ones. Okay. So, as Your Honor pointed out, Subsection A says that nothing except is provided in that paragraph. Nothing in the chapter shall limit the effect of the authority over local governments or thereof over decisions regarding the placement, construction, modification, or personal violence.  Okay. What I think that what Your Honor respectfully and my co-counsel have ignored is Subsection little 5. Okay? So, we've got the limits in B, Romanet I, Romanet II, Romanet III, Romanet IV. Subsection 5, Romanet V, says any person adversely affected by any final action or failure to act, I'm going to skip ahead, that's inconsistent, and here's the key part, that is inconsistent with this subparagraph may, within 30 days, bring in action. Okay. So, what that is saying is if we're going to allow cities to make decisions, if when they make that decision, you can, you, T-Mobile, or the applicant, can bring in action within 30 days if you think that it violates any of this subsection, which would be 1 through 4. I totally agree with that. Right. So, 1 through 4 are now enforceable through 5. More importantly, a final action, this court in the Oconee County case and the Supreme Court in the T-Mobile versus Roswell case held that a final action requires a written decision on an individual application. Yeah. And one of the things you could do is after that decision is you could attack the ordinance itself, the regulation. The problem that we have here is Judge Totenberg is operating under the assumption that the individual decision is the same thing. She's conflating it, because to some degree the parties did, with the regulation. Right. I've read your complaint. Your complaint in some ways attacks the regulation, in some ways attacks under 2 and 3, but those are different things. So, let me address Your Honor's point. I think that the city's argument and I think some of the questions that Your Honor is asking me are focusing in using the word regulation. The subsection, little i, says the regulation of. That is the verb form. That's an active form. That's not a regulation. Let me point you to a different section of... Read this. The regulation of shall not unreasonably discriminate among providers. Right. It makes no sense to say that an individual decision is unreasonably discriminating among various providers. It's a decision about an individual provider for an individual facility. Let me point Your Honor to an answer to that question. In this court's decision in Michael Linnet versus the Village of Wellington, it was 408 F. 3rd 757, there was a non-discrimination claim. And in that case, the court, and I'm reading to it, says the phrase unreasonably discriminate was intended to provide localities with the flexibility to treat facilities that create different visual, aesthetic, or safety concerns differently to the extent permitted under generally applicable zoning permits. Linnet has not shown that he was precluded from proposing an alternative cell site and did not present any evidence that an alternative site would adversely affect Metro PCS's coverage. Moreover, the alternative site utilized by the other provider may have had less of an impact. In Linnet, this court looked at the non-discrimination language, which also talks about the regulation of shall not, and found it to be a, that's a very case-specific, application-specific analysis because that's what is required. I can read that, though. It's consistent with what I'm talking about. But Your Honor, so let me point you to a different section that shows how Congress intended to use the word regulation. In the 1996 Act, Congress also adopted section 253, 47 U.S.C. section 253. Section 253, instead of using the verb form, says no state or local statute or regulation may prohibit or have the effect of prohibiting. In the 9th Circuit- It's denoting a regulation with a statute. That's exactly, that's different than the regulation of something. And let me point out- That the 9th Circuit in Sprint-Tilafne v. San Diego, which is at 490 F. 3rd, 700, held that section 253 is the mechanism by which plaintiffs would challenge facial challenges to ordinances, and that section 332 was intended to be a case-by-case enforcement of the effect of prohibition and other limits on individual case decisions. So that's how they've understood that. I think that you have to- Yeah, I don't think this really contemplates, because of 5, I don't think that this statute contemplates facial challenges. So section 332 you mean? Right. Correct. Yeah, right. There has to have been an individual decision because of what you led with this morning, which is subparagraph 5 under B, right? But that doesn't change the nature of the attack once that decision is made. You could challenge how the regulation itself works, or you can challenge the individual decision. The individual decision might have been infected by a corrupt regulation in that it unreasonably discriminates, or it has, it prohibits or has the effect of prohibiting the provision of personal wireless services. That's different from, say, the individual act not being done within a reasonable time, not having a decision in writing supported by a written record. So Your Honor, I think that it actually is important, the individual, so that's what happened here. There was an application. It was denied. In fact, we are arguing that that denial, which was an enforcement of the city's zoning code by the city, has the effect of prohibiting the provision of telecommunications. Yeah, but that's different from whether the ordinance, the regulation that they're applying has the effect. See, those are two different things. So let me point out, Your Honor, there is a wide recognition that the phrase, the regulation of a topic, in this case, siting, can also constitute, can be done through decision, case-by-case decisions. Let me point out, for example, Religious Land Use Protection Act, which was enacted around the same time in the late 90s, defines land use regulation as a zoning or landmarking law or the application of such law that limits or restricts a claimant's use of developmental land. That's at 42 U.S. 2,000. Well, that's very specific. Well. Or it's the application of it. Right. But, so let me also point to things like takings cases, regulatory takings. In Nolan v. California Coastal Commission, which is at 483 U.S. 825, recognized conditions on the grant of an application can constitute the regulation of properties to lead to a taking. Similarly, in the administrative context, it's well established under SEC v. Chenery that a body can act through adopting a regulation, like a rule, or through the regulation of a topic through individual case decision making. The Ninth Circuit. It seems to me that this statute's delineating, though, between the two and how you mount your attack when she's satisfied by it. So, Your Honor, let's talk about what would happen if that were the case, because the Ninth Circuit and Metro PCS did address that. They pointed out that, so basically, this would allow, what the reading that Your Honor is asking me about, it would allow a city to deny applications so long as they don't put it in writing in their ordinance. Let me give you an example. So, subsection 4 says, similar to subsection little i, that city or county shall not regulate... Let me, wait a minute. If the zoning authority denies a request and its denial is arbitrary and capricious, does not comport with the zoning ordinance. You have a remedy under state law, don't you? We have a remedy under subsection 3 as well, sure. Let's talk about... Yeah, sure. Yes. It may well be that what Congress is contemplating there is, well, the state has a method of dealing with the problem of a lawless zoning board. You know, you can challenge, you know, an arbitrary decision or a decision that is just not comporting with the ordinance. That's different from turning the federal court into that plenary form of review of all those zoning decisions. Your Honor, what it would allow them to do is draft their ordinances in a way that would give them an opportunity to deny applications based on subjective... That's why you can go in and you can attack how they write that ordinance. No, no. My point, Your Honor, is they can write an ordinance with criteria that would allow them to deny based on the evidence. Let's say they have some evidence under their own ordinance, but the effect of that denial has the effect of prohibiting service. In which case, you can attack that. But there's nothing... You can attack that they have written the regulation to have, to either prohibit or have the effect of prohibiting, but then what you're doing is you're attacking how they've written it. But at that point, Your Honor, my point is that the face of that ordinance, nothing about the face of the ordinance would make clear that the outcome is going to have the effect of prohibiting. So this is the point that the Ninth Circuit made in the Metro PCS case. I would point out that Judge Conway, in 1997, early on, held that subsection 5, little 5, and I'm pointing to just, because of course these were all after the briefing, it's ATP Tampa versus George County. It was a 1997 U.S. Lexus 22096. She held it an ordinance challenge. Wasn't right because there hadn't been a denial of a specific application. And I agree with that. But again, so... I agree with your rating of 5. You have to have, this isn't, this depends on an individual decision first having been made. But having been made, then you have a couple of ways of going after it in federal court. Your Honor, let me say that the scenario you're envisioning, I think actually is what we're doing. There was a denial under the city's zoning code. Nothing on the face of that zoning code, standing alone, would have the effect of prohibiting the provision of telecommunications service. We're saying that the effect of this specific denial, even if it's supported under their code, has the effect of prohibiting wireless, which is what Congress intended to prevent. Yeah, but see, the problem is the regulation has to have the effect of prohibiting it. It does have the effect if it allows them to deny, consistent with their own regulation, which is what they've done. But you didn't challenge the regulation. Maybe this, we're going in circles right now, because I think the whole, well, let me ask this to be clear. I think the Chief asked earlier, assuming the regulation does not cover your, the statute does not allow you to proceed on the claim as you've crafted it, does your client have other avenues of relief? I'm not sure I understand your question. I heard earlier a comment about being able to go to state court, for example, to vindicate your rights. I just want to be clear that if indeed the proper interpretation of this statute precludes the claim as you framed it, a single denial, as opposed to challenging the regulation, does your client have other avenues of relief? No. I think that, as I understand, because state law doesn't have a claim for us to claim that the effect of their denial has the effect of prohibiting provision of service. And so if it's clear from the act that Congress intended you to have an avenue of relief, would that err on the side of interpreting the word regulation to encompass the scenario that you've described? I'm just trying to make sure, if indeed Congress intended to make sure that you have an opportunity to vindicate your rights, and this provision is not it, are you saying there's no other avenue? Correct, Your Honor. Your Honor, the Congress intended, Congress recognized, the Supreme Court has said, Congress recognized that local zoning can lead to a patchwork quilt of coverage. Congress wanted to promote the deployment of advanced communications and wireless. And so if they wanted to make sure that individual decision making by cities did not have the effect of creating patchworks where people could provide service. You said something just a moment ago, the effect, that the individual denial would not have the effect of prohibiting. And that's just not what the statute says. That's if the phrase, the regulation of. That's right. It comes down to that. Right. It comes down to whether that encompasses individual denials, which is delineated as something different in some paragraphs two and three. Right. And I would suggest, Your Honor, that it is widespread in the law that the phrase, the regulation of, encompasses individual case decisions. And I read a statute that does much of what you've described here, but it also preserves local zoning authority. And part of local zoning authority, too, is there's a process under state law ordinarily where you can challenge individual decisions as not comporting with the ordinance itself, with state law. You do that through state law, but that doesn't mean that they have turned the federal courts into courts of review of every decision about a denial of a wireless tower. Your Honor, I think that Congress clearly intended in subsection five to have the courts review individual decisions if they violated any of the four other subsections, including I agree with that. Whether it would have the effect of prohibiting. It just depends on what that reading, the correct reading is. And, Your Honor, I hesitate to add to the record, but given that it wasn't briefed, we would appreciate the opportunity to cite additional cases. How long would you like? We could even do timing or pages. Both. We could, within ten days, give you no more than. I'll give you two weeks. Okay. How many pages do you want, ten? That's plenty. Like I said, I think there's a wealth of case law that addresses this phrasing. Yeah. All right. And, we want help. You know, Mr. Thompson, I appreciate the help. And, no problem. Yeah. Two weeks. We'll issue an order. Two weeks and ten pages each, simultaneous briefing. Okay. And, you know, there are a lot of cases here. I don't read how any of them have really grappled with the text and the way we're talking about. I understand, Your Honor. But, I hope you can enlighten me. No, I appreciate the opportunity to further brief. You know, 15 minutes to address this important issue.  When it wasn't briefed is a bit short. But, thank you for the opportunity. You're certainly welcome. Ms. Couch, you've got five minutes, if you want it. I think we certainly are hitting all around of what to do with the conundrum that we find ourselves in where we have a body of case law that appears to have gleaned over the difference of a very important set of words in a very particular statute. Talking about RLUIPA, talking about the SEC regulations, that's great. That's not the Telecommunications Act of 1996, which had a very specific purpose, which had a very specific goal. And I think trying to pigeonhole those words into this set of a statutory framework just doesn't work. It's a square peg in a round hole. I think there could still potentially be an attack under subparagraph one that explains why the ordinance itself either unreasonably discriminates or prohibits or has the effect of prohibiting. And I think the individual decision informs that decision. But it's attacking the regulation, it seems to me. And the district court did not operate under that assumption at all. And I'm not saying that this forecloses further litigation. From my perspective, if what I'm saying is the right reading of the statute, what has to happen is it has to go back and focus on a correct understanding of the act. I agree. And I think the question earlier about do they have a remedy with this interpretation, I think every telecommunications provider has a remedy under five. I mean, that's the whole point, is you can challenge the decision or the regulation or both. Let me dismiss, Roswell. So, in the event that the city has a fine ordinance that does not appear to prohibit or would not, if faithfully administered, affect the prohibition of wireless services, if, nevertheless, a zoning board decides to just ignore what the ordinance says and deny arbitrarily, would the applicant for the request have a remedy under state law? How would that work? I think so. Under Georgia law, under the Zoning Procedures Act, you can certainly challenge. You could even get into an inverse taking. If you're going to say, well, I have this right under your own ordinance, but yet you're not following your ordinance, it's an inverse taking, certainly. Inverse condemnation. Yes. What I'm asking is, do superior courts or some bodies under state law review individual decisions like that to ensure that they're comporting with the ordinance itself? Of course. Yes, sir. Yes, sir. What we usually see is both a challenge to the ordinance itself and to the decision, sort of a belt and suspenders approach. But you would agree that the federal law allows the telecommunication provider to attack the ordinance itself when they've had an individual decision against them? Absolutely. Absolutely. I think that's exactly what five, the reason why it uses the word action. Yes, sir. So you might be able to do that in state court, but that Congress has clearly allowed to be brought in federal court. Correct. Yes, sir. Okay. Unless there are any other questions, I appreciate the time. And we will get to a brief. Thank you. Thank you. We're going to be in recess until tomorrow.